1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

not electronic

-------------------------------X

UNITED STATES OF AMERICA,

                :   CR-06-776
                    (JFB)

   -against-          :   United States Courthouse
                    Central Islip, New York

THOMAS SALOY,

                :   May 2, 2008
          Defendant.      10:45 a.m.

-------------------------------X

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT COURT JUDGE

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 16 2008 ★

LONG ISLAND OFFICE

APPEARANCES:

For the Government:     ROSLYNN MAUSKOPF, ESQ.
                           UNITED STATES ATTORNEY
                           BY: ALAN BODE, AUSA
                    One Pierrepont Plaza
                    Brooklyn, New York 11201

For the Defendant:      PETER RUBIN, ESQ.

Official Court Reporter:   Paul J. Lombardi, RMR, FCRR
Ph. (631) 712-6106       100 Federal Plaza - Suite 1180
Fax (631) 712-6122       Central Islip, New York 11722

Proceedings recorded by mechanical stenography.
Transcript produced by CAT.



1          THE CLERK:  Calling case USA v Thomas Saloy.

2          Counsel please state your appearance for the

3   record.

4          MR. BODE:  Alan Bode for the government.

5          Good morning, your Honor.

6          MR. RUBIN:  For the defendant, Peter Rubin,

7   R-U-B-I-N.

8          THE COURT:  Good morning, Mr. Rubin.

9          As you know, we are here for sentencing.  Are

10  both sides ready to proceed?

11         MR. BODE:  Yes, your Honor.

12         MR. RUBIN:  Yes, your Honor.

13         THE COURT:  Let me just go through what I have

14  received to make sure I have gotten everything that has

15  been submitted by the parties.

16         I have Mr. Rubin's sentencing memorandum.  It's

17  undated but it has an Exhibit A to it.

18         I have a November 20th letter sentencing

19  submission from Mr. Rubin which attaches progress reports

20  of the defendant's treatment, as well as numerous letters

21  from the community, and obviously I have been receiving

22  those progress reports periodically while the defendant

23  has been on bail.  So some of those reports were

24  repetitive, ones I already received, but, nonetheless,

25  they were attached to the letters of submission.

1            I also received an April 28th letter from
2    Mr. Rubin which attaches the most recent update report
3    from the halfway house dated April 18th, and I also
4    received a few letters independently of Mr. Rubin's, ones
5    that came in through the mail from people in support of
6    Mr. Saloy.
7            Is there anything else that I should have from
8    the parties in connection with sentencing?
9            MR. BODE:  Not to my knowledge, your Honor.
10           MR. RUBIN:  I believe that that's everything we
11   have submitted, your Honor.
12           THE COURT:  Is there any reason, Mr. Rubin, that
13   other than the progress reports which, because of privacy
14   reasons I don't think should be made public, is there any
15   reason why I shouldn't file your sentencing submissions
16   and the letters?
17           MR. RUBIN:  No reason, your Honor.
18           THE COURT:  I will do that, then.
19           Mr. Rubin, have you received a copy of the
20   presentence report and the addenda, reviewed them, and
21   discussed them with Mr. Saloy?
22           MR. RUBIN:  I have, your Honor.
23           THE COURT:  Mr. Saloy, have you received -- you
24   can stay seated, Mr. Saloy.
25           Have you received a copy of the presentence

1    report and the addenda?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Have you had sufficient time to

4    review it and discuss it with Mr. Rubin?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Mr. Rubin, does your client have any

7    objections to the report?

8              MR. RUBIN:  No, your Honor.

9              THE COURT:  Does the government have any

10   objections to the report?

11             MR. BODE:  No, your Honor.

12             THE COURT:  I adopt the information contained in

13   the presentence report as factual findings by the court.

14             As you know, pursuant to **United States v Booker**,

15   the sentencing guidelines are advisory.  According to the

16   calculation in the presentence report, the advisory

17   guideline range is a level 22, criminal history category

18   I, which is 41 to 51 months.

19             Do both sides agree that's an appropriate

20   calculation of the advisory guideline range?

21             MR. BODE:  Yes, your Honor.

22             MR. RUBIN:  Yes, your Honor.

23             THE COURT:  In terms of the advisory

24   calculation, I agree with the probation department and the

25   parties, that the advisory guideline range is 22,

1    consisting of the following, a base offense level 18 under

2    Section 2G2.2A5, a two-level increase is warranted under

3    Section 2G2.2B2 because the material included photographs

4    of minors under the age of 12, a two-level increase is

5    warranted under 2G2.2B6 because the defendant used a

6    computer to possess child pornography.

7         There is a three-level increase under 2G2.2B7B

8    because the offense involved the possession of 215 images

9    of child pornography.  That's an adjusted offense level of

10   25.

11        I am awarding the defendant a three-level

12   reduction for his acceptance of responsibility under 3E1.1

13   which results in a total offense level of 22, criminal

14   history category I, which is an advisory range of 41 to 51

15   months.

16        Obviously the range is advisory.  It's not

17   mandatory.  I must consider it in light of all the other

18   factors that I need to consider under the law.  Mr. Rubin

19   has made written submissions arguing for a nonguideline

20   sentence on a number of grounds.

21        I will now give him an opportunity to speak on

22   those issues and any other issues that he'd like to raise

23   in connection with sentencing based upon all of the

24   3553(a) factors.

25        Go ahead, Mr. Rubin.

1      MR. RUBIN: Your Honor, please, under normal

2  circumstances I would rely upon the submissions. I

3  believe that they are relatively replete with the position

4  of my office representing the defendant.

5      However, on behalf of Mr. Saloy, we are not

6  asking this court for compassion. We are not asking for

7  mercy, but we are asking for understanding. This

8  individual has come a very long way in the year and a half

9  that he's been in a custodial situation under the auspices

10  of a therapist from St. Luke's Institute.

11      Unfortunately, Judge, for many years I have

12  represented religious in similar circumstances. I can

13  tell this court that this is the first time I have seen

14  the type of progress that has been reported from the

15  institute, especially the letter of April 18th of which

16  your Honor has before him.

17      I do not think that St. Luke's would be happy

18  with this characterization, but as far as I'm concerned,

19  the defendant has somewhat become a poster child for the

20  successful completion, or at least continuing in the

21  program. This is the first time, as I told your Honor,

22  that I have ever seen reports which have shown the ability

23  of the institute to impart successful therapy and the

24  recipient of the therapy not only accepting the therapy,

25  but making progress.

1    As we asked in our memorandum, and I will ask

2    the court once again, the therapists seemed to indicate

3    that he needs at least another year of therapy.  Were he

4    to be withdrawn from his therapeutic surrounding, I think

5    that all of the work that has taken place for the last

6    year and a half would probably be vitiated, and we might

7    see a remission to behavior which is not acceptable.

8    As such, I would ask your Honor to allow

9    Mr. Saloy to continue with the halfway house.  They are

10   prepared to accept him back, were the court to be so

11   inclined.

12   Thank you, sir.

13   THE COURT:  Okay.  Thank you, Mr. Rubin.

14   Mr. Saloy, you also have the right to be heard

15   in connection with sentencing.  I obviously received your

16   letter which I have reviewed, but you are entitled to

17   speak on anything you would like to say in connection with

18   sentencing.

19   THE DEFENDANT:  Just, your Honor, to begin with

20   by thanking you and the court for allowing me the 17

21   months to go to St. Luke's Institute to receive therapy.

22   In the past year and a half that I have been

23   there, I have been able to focus on two major events, or

24   two major themes, and one is taking responsibility for the

25   actions that have brought me here today.

1        In looking at those actions and realizing how

2    wrong they were to in this public setting in the court to

3    apologize to the people of Long Island, to the people of

4    our society for the possession of child pornography that I

5    did possess, realizing how wrong that is and how evil that

6    is, to apologize to the court, to the church that I

7    represented and to my family.

8        Secondly, in that time I have had the

9    opportunity to, in a very therapeutic and safe and

10   challenging environment to look at the events of the 47

11   years of my life, to realize that as a child, I

12   received -- I was at the hands of abuse, both sexual abuse

13   and verbal abuse, have looked at those situations and the

14   impact that they had on me.  Now, looking at those actions

15   and how I could rewire my brain to make appropriate and

16   mature decisions in all aspects of my life.

17       So, with that being said, to reiterate

18   Mr. Rubin, to ask me to allow me to continue that therapy

19   at St. Luke's Institute.

20       THE COURT:  Thank you, Mr. Saloy.

21       Mr. Bode, does the government wish to be heard

22   in connection with sentencing?

23       MR. BODE:  Your Honor, pursuant to the plea

24   agreement, I make no recommendation.  I leave the

25   sentencing to the court's discretion.

1          I would hand up to the court a proposed final

2     order of forfeiture, which I have also given to defense

3     counsel, and ask that that be made part of any judgment.

4          THE COURT:  Mr. Rubin, you have no objection to

5     that?

6          MR. RUBIN:  None at all, your Honor.

7          THE COURT:  I'm now going to describe the

8     sentence I intend to impose.  I'll give the parties one

9     final opportunity to make any legal objection before the

10    sentence is finally imposed.

11         In imposing sentence I have carefully

12    considered, as I must, the factors set forth by Congress

13    in Section 3553(a).  These factors include the nature and

14    circumstances of the offense and the history and

15    characteristics of Mr. Saloy, the need for the sentence

16    imposed to reflect the seriousness of the offense, to

17    promote respect for the law, and to provide a just

18    punishment for the offense, to afford adequate deterrence

19    to criminal conduct, to protect the public from further

20    crimes of the defendant and to provide the defendant with

21    rehabilitation.

22         I have also considered the advisory sentencing

23    guidelines issued by the sentencing commission and the

24    applicable range in this case, as well as the applicable

25    policy statements issued by the sentencing commission.

1    Another factor I must consider is the need to avoid
2    unwarranted sentencing disparities amongst
3    similarly-situated defendants.  Restitution is not
4    applicable in this case.
5              I have given this sentencing a lot of thought.
6    I have spent a lot of time reviewing everything carefully
7    that's been submitted.  Those include a careful review of
8    every one of the over 40 letters submitted on Mr. Saloy's
9    behalf.  It is clear from these letters to me that he has
10   had an extraordinarily positive impact on the lives of
11   many people that he served as a priest on Long Island.
12             The letters are filled with stories of how he's
13   helped parishioners and members of the community in so
14   many different ways, whether it be illnesses in hospital,
15   the death of a loved one, substance abuse or caring for
16   the poor.
17             There's a letter from a mother who tells about
18   how Mr. Saloy drove to Boston to be with her during a
19   liver transplant for her son.  There's a letter from a
20   mother who lost her son on 9/11 explaining how he was a
21   great comfort to her and her family.  There's a letter
22   from a mother who describes as Mr. Saloy, quote, walked a
23   long journey with me when my daughter was sick with cancer
24   for many years.
25             There's another letter about how he helped

1    establish Krista House a home for the dying poor of

2    Long Island, especially those with AIDS.  The love and

3    support that these people have for Mr. Saloy jumps off the

4    pages of these letters and it is clear to me he has

5    impacted the lives of many people in a very positive way

6    over the years.

7            It makes it all the more tragic that he betrayed

8    the trust of these parishioners in the community that he

9    served by engaging in this criminal conduct.  But in

10   connection with sentencing, you can be assured that I have

11   carefully considered and weighed all of these good works

12   that he's performed for many years.

13           However, these good works are not the only

14   factor that I must consider.  I need to look at the

15   seriousness of this offense.  This is obviously an

16   extremely serious offense.

17           It involved a total of 215 images of child

18   pornography.  Some of these images were extremely graphic.

19   Based upon the summary in the probation report, they

20   depicted victims which included those ranging from ages

21   one to 14, the majority of the victims ranging from age

22   six to 14.  They include images including prepubescent

23   children engaged in sexually explicit conduct with adults

24   and with other prepubescent children.  Some images were of

25   known victims as or identified in the National Center For

Missing and Exploited Children.

In connection with this conduct, the defendant also engaged in sexual on-line chats with teenage boys. In addition, the possession took place over a period of one and one half years, which is a substantial period of time, and I cannot emphasize, enough, the seriousness of this criminal conduct.

I do recognize, as Mr. Rubin pointed out in his papers, that there's no evidence that the defendant ever physically abused any children in any way.  There is no evidence that he ever attempted to solicit any children over the internet, or in any other way.  However, that in no way minimizes the extremely serious nature of the crime here.  If he had done those things, he would obviously be looking at even more time under the guidelines.

The possession of these images of child pornography, even apart from the absence of distribution by the defendant, has been deemed by Congress as a crime of violence for obvious reasons.  The demand for child pornography created by individuals who seek and possess child pornography creates a market for their horrific exploitation of children, the existence of the internet and chat rooms in which these photographs are sought and exchanged has exponentially magnified the problem of distribution and of child pornography and the extreme

1    sexual and physical abuse of children that is inherent to
2    that entire industry.

3            As Congress has noted, the existence of child
4    pornography, quote, creates the potential for many types
5    of harm in the community, and presents a clear and present
6    danger to all children, end of quote.  That's from the
7    Child Pornography Prevention Act.

8            Therefore, because of the possession, even apart
9    from the distribution of child pornography clearly
10   facilitates the victimization of children in the
11   community, punishment of those who possess child
12   pornography needs to reflect the extremely serious nature
13   of this crime.

14           I recognize that Mr. Saloy, and it is shown
15   through the progress reports that I have reviewed, has
16   made significant progress during his rehabilitation, and
17   that's why I have let that rehabilitation go forward for a
18   very long period of time, which is extraordinary for me to
19   do.  And I commend Mr. Saloy for the efforts that he has
20   made, and for the progress that he has made, and I have
21   taken that into consideration.  I am hopeful that the
22   treatment has reduced the likelihood that he will ever
23   resort to this conduct again.

24           Obviously the true test will come when he's
25   outside the confines of the setting of a hospital or jail

1   where he can again, among other things, have access to

2   computers, but I am certainly encouraged by his progress

3   in the treatment that he's made.

4         Even apart from the issues of specific

5   deterrence of this defendant and whether he will resort to

6   this again, I have considered the issue of general

7   deterrence, in other words, apart from whether Mr. Saloy

8   will commit this type of offense again, I have to consider

9   that there are many other individuals out there right now

10  who are either involved in child pornography now or may

11  think about possessing child pornography in the future,

12  and I need to fashion a sentence in this case that takes

13  into account the need to send a message to those

14  individuals and deter them from engaging in this type of

15  violent criminal conduct.

16        Having considered all these factors, I find in

17  the exercise of my discretion that a sentence within the

18  advisory guideline range is appropriate in this case, and

19  I intend to sentence Mr. Saloy to 41 months.  That

20  sentence is necessary to reflect, among other things, the

21  seriousness of the offense, to promote respect for the

22  law, and to provide a just punishment for the offense, and

23  to afford adequate deterrence to criminal conduct.

24        I have considered all the arguments in

25  mitigation, including his rehabilitation efforts while

1   under house arrest at the hospital, his lack of a criminal

2   record, his genuine remorse as expressed at the plea,

3   today, and in his letter and his acceptance of

4   responsibility.  I have considered his proffer with the

5   government, and his many good works in the community.

6          But, in my discretion, I don't believe that any

7   of these factors, individually, or in combination, are

8   sufficient to warrant here a departure from the advisory

9   guideline range, or a nonguideline sentence.  However, I

10  have considered these mitigating factors in not giving him

11  a higher sentence which, absent these factors, I would

12  otherwise have imposed in this case.

13         In sum, it's my conclusion that a sentence of 41

14  months imprisonment adequately accounts for the various

15  3553(a) factors as applied to this case, as I say,

16  including the seriousness of the offense, the need for

17  deterrence, to provide just punishment, rehabilitation and

18  to promote proper respect for the law.

19         I would say with respect to rehabilitation, I'm

20  obviously sensitive to the fact that Mr. Rubin is

21  concerned that the incarceration will impact Mr. Saloy's

22  rehabilitation efforts.  I'm hopeful that those efforts

23  will continue in the jail.

24         I gave him as much time as possible to complete

25  as much of that rehabilitation as he could.  But there

1   comes a point when the punishment needs to be imposed, but

2   I am hopeful that he will continue the rehabilitation

3   efforts in jail, and upon his release will again join the

4   community and hopefully be a law-abiding and productive

5   member of society.

6          In addition, I intend to impose three years of

7   supervised release with the standard conditions and the

8   following special conditions.  I intend to impose a mental

9   health treatment program.  I intend to impose restrictions

10  on his use of computers.

11         I intend to impose the restriction regarding

12  notifying probation when he establishes a significant

13  romantic relationship and informing the other party of his

14  criminal history.  I intend to impose the search

15  condition, and that he not possess a firearm, ammunition

16  or destructive device.  I also intend to impose the

17  mandatory $100 special assessment.

18         I don't intend to impose of fine because of his

19  inability to pay a fine.  As I said, restitution is

20  applicable and I intend to order forfeiture of the items

21  that were listed in the plea agreement in a proposed final

22  order of forfeiture.

23         MR. BODE:  May I also ask, your Honor, probation

24  generally asks for a period of supervised release, no

25  unsupervised contact with minors.

1    I would ask that as well.

2    THE COURT:  I will do that as well.

3    MR. RUBIN:  I would ask, if I may, your Honor,

4    prior to going into other areas, as far as the

5    unsupervised contact with minors, he does have nephews and

6    nieces as reported to Probation Officer Testa in the

7    report, and the parents indicated in the report that they

8    never had any problems with the defendant being with his

9    nephews and nieces.

10   So that need not be any supervised situation.

11   THE COURT:  Mr. Bode, is there any acceptance to

12   be made for family members?

13   MR. BODE:  It's a condition that we generally

14   ask for.

15   I think maybe your Honor makes that a condition

16   subject to the probation department.  If probation speaks

17   with the parents, and the parents don't have any issues

18   with it, then I'd be hard-pressed to have issues with it

19   as well.

20   However, unless we have them on the record

21   saying that, I would like the probation department, while

22   he's on supervised release, to make that determination.

23   THE COURT:  Okay.

24   I will word it as no unsupervised contact with

25   minors, unless there is approval by the parents and

1    probation, the probation department.

2            MR. BODE:  That's fine, your Honor.

3            THE COURT:  Okay.

4            Is there any legal reason I cannot impose that

5    sentence, Mr. Bode?

6            MR. BODE:  No, your Honor.

7            THE COURT:  Mr. Rubin?

8            MR. RUBIN:  If I may, your Honor.

9            I would respectfully at this time, and this is,

10   once again, somewhat unusual, but these circumstances are

11   also somewhat unusual in the fact that the defendant's

12   activity only started, at least as we can tell, we being

13   my office, the probation department, US Attorney, after a

14   severe heart attack which nearly cost him his life.  He

15   has been in a custodial situation for 18 months.  I don't

16   know if this court could see fit to give him credit for

17   that 18-month period.

18           Secondly, I would ask if the court doesn't see

19   fir to doing that, prior to him surrendering to the US

20   Bureau of Prisons, I would ask the court to allow him to

21   return to the custodial situation to the halfway house in

22   order to complete the program, which is at least another

23   six months, if not another year.

24           I would be disappointed, given my history of

25   dealing with religious, to see someone who has been, at

1    least up to this point, successful in a program to be put

2    into a setting which might destroy a year and a half worth

3    of therapy.

4              THE COURT:   I have considered, Mr. Rubin, all

5    the things that you have just mentioned.

6              First I have to say I was a little taken aback

7    by the suggestion in the papers which you reiterated here

8    that somehow the inappropriate behavior was triggered by

9    the heart attack.  I understand the evidence is that his

10   behavior in this area started after the heart attack.

11             But I think it defies logic to me to suggest

12   that a heart attack somehow caused someone to turn to

13   child pornography.  The issues here, as you know, and as I

14   know from reading the presentence report, and as Mr. Saloy

15   alluded to here today, are much deeper and much more

16   complex than saying this was the result of a heart attack.

17   So I'm hoping that the treatment, it seems to reflect the

18   complexities of this issue in trying to rehabilitate the

19   defendant.

20             In terms of giving him credit for the time in

21   the hospital, I don't think that's appropriate in this

22   case.  I understand that he has had restrictions on his

23   liberty, but he has been free to be on the hospital

24   grounds, correct, during this period?

25             MR. RUBIN:  He had to be within a certain

1    yardage of an analog phone because pretrial services in

2    Maryland had him wearing an ankle bracelet.

3              So his liberty still was very much restricted.

4              THE COURT:  I understand that.  And I thought

5    about that.

6              But it obviously is not jail, and I don't think

7    it's appropriate for me to give some type of departure

8    from the advisory range or a nonguideline sentence because

9    of that fact.  As I said, usually he would have been in

10   jail all of this time in this type of case.  It's a crime

11   of violence.

12             Certainly at the time of the plea he would have

13   gone in.  Absent that, I wanted him to continue this

14   rehabilitation.  I don't think because that has been on

15   for some period, that somehow I should subtract out that

16   time.  As I said, there are other things going into this,

17   including deterrence.  So I think it's necessary to have

18   the sentence of 41 months.

19             In terms of the completion of the treatment,

20   this has been a year and a half, Mr. Rubin.

21             MR. RUBIN:  That's correct, your Honor.

22             THE COURT:  At this point, my understanding is

23   he's in a halfway house treatment.

24             MR. RUBIN:  That's correct.

25             THE COURT:  And halfway house treatment is

1    usually what you have -- what he would have after his term

2    of incarceration.  I let him complete, I think for about a

3    year, the main treatment program, and allowed some

4    additional time.

5             But I don't think any purpose will be served by

6    prolonging this time that he has to serve, a year or a

7    year and a half.  As I said, it was extraordinary to allow

8    this to go on for this long, and I just don't think it's

9    appropriate to again adjourn letting him serve this

10   sentence.

11            They do have treatment programs in the jail.

12   Obviously I understand that's not his first choice or your

13   first choice.  But I'm hopeful that he has a sufficient

14   foundation, based upon this year and a half that I let him

15   rehabilitate, to withstand the stress obviously that will

16   be associated with being in jail and not regress.

17            But I don't believe I can let this go on any

18   further.  He needs to start serving his sentence.

19            MR. RUBIN:  I would further ask, your Honor, as

20   Ms. Testa has reported to the court and the parties, his

21   parents are elderly and severely ill.  His father has had

22   amputations, has diabetes.  His mother has had a litany of

23   surgeries.

24            And I would ask the court make a recommendation

25   that he be allowed to serve whatever period of time the

1   Bureau of Prisons determines will be his maximum sentence

2   at a facility where visitation would be possible.  I would

3   also request the court make a recommendation that based

4   upon the history of my client as recited in the probation

5   or presentencing report that the type of facility he be

6   put in be a minimum security facility.

7           I'm terribly afraid were he to be put in a

8   facility with inmates serving long sentences, that the

9   fact that he is a petite individual might subject him to

10  punishment way beyond what was contemplated by the

11  statute.

12          THE COURT:  Does the government have any

13  objection to that?

14          MR. BODE:  I think some sort -- if I read that

15  as an application for some sort of protective custody, I

16  think that might be -- is it based on his status or his

17  build?

18          If it's based on his build --

19          THE COURT:  I don't think he was asking for

20  protective custody.

21          I thought you were asking to the extent

22  consistent with BOP regulations he be designated to a

23  minimum security facility.

24          MR. BODE:  If it's consistent with the BOP, I

25  have no problem with that recommendation.

1    I would note should the defendant elect to do

2  so, it's purely voluntary, but in the last 24 to 36 months

3  of his sentence, such as this, a defendant can elect to go

4  into a treatment program.  I believe currently it's at FMC

5  Devons in Connecticut -- Massachusetts, actually.  It's a

6  daily program, and it's for persons with just this type of

7  crime.

8    It would obviously be a location where he would

9  likely be, I would think, more safe than in a general

10  population setting given that it's persons in the same

11  situation and they are obviously adept at dealing with

12  that population specifically.

13    So if the defendant is interested in getting

14  that treatment, I'd ask counsel, he might consider asking

15  for that recommendation.

16    MR. RUBIN:  Absolutely, your Honor.

17    THE COURT:  I should make that recommendation

18  then?

19    MR. BODE:  Yes.

20    As long as counsel's on board with that, I think

21  that's a good recommendation because if there are safety

22  concerns, I think he's more safe in that location.

23    And, two, it's treatment which I think everyone

24  here agrees is appropriate, and that Mr. Saloy desires.

25  So I think that's a good track to keep him on.

1       THE COURT:  That's what you would like as well,

2   Mr. Rubin?

3       MR. RUBIN:  Obviously I would like him not to be

4   incarcerated.

5       But given the alternative and the mind-set, that

6   would be an ideal resolution, given the circumstances.

7       THE COURT:  In terms of visitation, my

8   understanding is that all BOP facilities obviously allow

9   family members to visit.

10      To the extent his parents are elderly and sick

11  and not able to travel, I will recommend, to the extent

12  possible, he is designated to the -- they are in the New

13  York City area?

14      MR. RUBIN:  That would then preclude him from

15  being in this program.

16      Since the maximum sentence your Honor is

17  imposing is 41 months and the parameters for this program

18  are for people serving two to three years, perhaps the

19  Bureau of Prisons might see fit to immediately designate

20  him to this facility, and we will worry about family

21  visitation, which I think is far outweighed by the

22  therapeutic requirements of my client.

23      THE COURT:  Okay.

24      I'll put two recommendations.  One, I will

25  recommend, to the extent eligible, that the defendant be

1  designated to FCI Devons?

2          MR. BODE:  FMC, I believe it is, Devons,

3  D-E-V-O-N-S.

4          THE COURT:  To participate in their treatment

5  program?

6          MR. BODE:  Yes.

7          THE COURT:  And the second recommendation will

8  be to recommend, to the extent that he is not eligible for

9  FMC Devons, that he be designated to a minimum security

10 facility, if consistent with BOP regulations.

11         MR. RUBIN:  Thank you, your Honor.

12         PROBATION OFFICER:  Your Honor, probation

13 requests two clarifications of the special conditions of

14 supervised release for both mental health treatment and

15 the computer restrictions.

16         We request that it be put on record the

17 conditions as set forth in the recommendation, just so

18 there's no questions when he is on supervised release.

19         THE COURT:  I will incorporate all the details

20 of the restrictions that probation recommends in these

21 situations, including with respect to the mental health

22 treatment, I will include the cost provision as well.

23         My intention is to have the defendant remanded

24 today.  I will allow you, Mr. Rubin, to make an argument

25 for a voluntary surrender, but that's my intention.

1          MR. RUBIN:  The argument for the voluntary

2     surrender, from our position, would ask the court only to

3     allow him to return to the halfway house until such time

4     as the actual surrender designation of the facility is

5     fixed by the Bureau of Prisons.

6          He would still be in the same custodial

7     situation.  I guess pretrial services would still be in

8     control of his --

9          THE COURT:  You understand I'm rejecting the

10    idea that he will stay out until he completes treatment,

11    but now you are asking a more limited request, which is

12    that he be allowed to stay out until a facility is

13    designated in the hope it will be one of these facilities.

14          Is that what you are asking for now?

15          MR. RUBIN:  And to give my office the ability to

16    see what we could do to facilitate one of these facilities

17    accepting him.

18          THE COURT:  Does the government have any

19    objection to that?

20          MR. BODE:  I leave it to the court's discretion.

21          THE COURT:  I will allow for, because of the

22    issue regarding the desire to get him designated at either

23    a minimum security prison or the treatment facility at FMC

24    Devons, I think there are exceptional circumstances that

25    favor voluntary surrender to the designated facility.

1              In this situation, under the law, even if the

2    defendant does not satisfy the criteria for release under

3    Section 3143(a)(2), he may be released or be allowed out

4    on continued release if I find that the conditions of

5    release set forth in 3143(a)(1) have been met, and it is

6    clearly shown that there are exceptional reasons why his

7    detention would not be appropriate under Section 3145 C.

8    This is set forth most recently by the Second Circuit in

9    **United States v Lea**, L-E-A, 360 F.3d, 401 Second Circuit

10   2004.

11             With respect to the criteria of 3143(a)(1), I

12   find by clear and convincing evidence that under the

13   restrictions that I have already imposed, including that

14   he stay at the hospital, and not have any access to

15   children or a computer, that he is not likely to flee or

16   pose a danger to the safety of any other person or the

17   community under those conditions for the brief period of

18   time we are talking about here.

19             I also find that there are exceptional reasons

20   here, as I have discussed, relating to a desire to avoid

21   him getting housed in a maximum security facility, but to

22   allow his lawyer to make efforts to have him designated to

23   a facility or the facilities that we have discussed today.

24   I also find that it's exceptional, obviously, that he has

25   been out already for a period of a year and a half without

1   incident at the hospital, and that he has demonstrated

2   progress as I have outlined.

3          I think all of these things create an

4   exceptional circumstance that justifies continuing his

5   release pending a designation.  I will set a date for

6   that.

7          Is 30 days sufficient to allow it to happen?

8          MR. BODE:  I think the probation department

9   indicates six weeks, your Honor.

10         THE COURT:  Six weeks.

11         Okay.

12         MR. BODE:  The marshal's service indicated the

13  defendant needs to go down to the third floor today, your

14  Honor, to fill out the paperwork regarding the

15  self-surrender.

16         THE COURT:  I will set the surrender date June

17  16, 2008, to the facility designated by the

18  Bureau of Prisons.

19         If a facility has not been designated by that

20  time, Mr. Rubin, he should then report, you either have to

21  ask for an extension of that date or you have to report to

22  the marshals here, correct?

23         MR. BODE:  Yes, your Honor.

24         THE COURT:  Hopefully six weeks will give you

25  sufficient time to look into this and give the

1    Bureau of Prisons sufficient time to designate a facility.

2         Okay?

3         MR. RUBIN:  If not, I can call your deputy?

4         THE COURT:  You should put in a letter, and I'll

5    address it.

6         MR. BODE:  I know this is the understanding, but

7    I want to put it on the record, that Mr. Saloy is going

8    to -- after signing the paperwork at the marshals, is

9    going to be going back to the treatment facility under the

10   same conditions, electronic monitoring, et cetera, and

11   that he's going to be taken back under escort as he came

12   to court.

13        Correct?

14        MR. RUBIN:  Yes.

15        Magistrate Judge Orenstein initially dictated

16   the rules of the release which I believe will continue.

17   We have a retired FBI agent who is in the employ of the

18   Diocese of Rockville Centre who has undertaken the

19   responsibility of transporting the defendant to and from

20   the facility.

21        I should advise the court that pretrial services

22   there is closed for the weekend and expects the defendant

23   to report, if he is allowed to return, which he is

24   obviously going to do, on Monday, when they will replace

25   the monitoring on him.

1          THE COURT:  The other thing I have some

2    concerns, although I'm hopeful that as a result of the

3    treatment that he's undergoing that some of the issues I

4    noted, the suicidal tendencies at the time of the arrest,

5    and I want to make sure now that sentence is imposed the

6    hospital is aware of the history and he gets regular help

7    to meet that.

8          MR. RUBIN:  They are well aware of the history.

9          He is taking medication for depression, and

10   hopefully that medication will address the issue.

11         THE COURT:  Okay.

12         Obviously they should be specifically focused on

13   that now that he's gone through the sentencing process.

14         MR. RUBIN:  We will notify them.

15         THE COURT:  Is there anything else before I

16   impose this sentence?

17         MR. BODE:  No, your Honor.

18         Thank you.

19         THE COURT:  We have somebody in the audience.

20         MR. GIBBONS:  Your Honor, if I may.

21         My name is Daniel Gibbons.  I represent the

22   Diocese of Rockville Centre.  Is the order that the

23   Diocese will have to pay for the escort that was just

24   described by Mr. Rubin?

25         THE COURT:  I didn't order that.

1    I thought -- how has he been going in the past?
2  I don't make any orders regarding that.

3    MR. RUBIN:  The initial agreement, and this
4  comes as somewhat of a surprise to me, obviously I do not
5  represent the diocese, but I have a continuing dialogue
6  with the diocese.

7    The diocese, through the director of priest
8  personnel at the initial arraigning procedures in front of
9  Magistrate Judge Orenstein, agreed to undertake
10 transportation to and from whenever required by the court.

11    This is the first I'm hearing about the fact
12 that the diocese does not want to pay for transportation.

13    MR. BODE:  What I might recommend, to solve the
14 issue, if both parties would agree, is that the defendant
15 would agree to reimburse that cost, should the diocese
16 ultimately not agree to the transportation cost.

17    THE COURT:  I would never order the diocese to
18 pay for that transportation.  I don't think that would be
19 appropriate.

20    If there has been some type of voluntary
21 arrangement where they have been doing that and they will
22 continue to do that, then obviously that's up to them.

23    But if they do not agree, then the defendant
24 will need to bear the cost of that.  Okay, Mr. Rubin?

25    MR. RUBIN:  Yes.

1           MR. GIBBONS:  Thank you, your Honor.

2           THE COURT:  Is there anything else before I

3     impose this sentence?

4           MR. BODE:  No, your Honor.

5           Thank you.

6           THE COURT:  Mr. Rubin, anything else?

7           MR. RUBIN:  Once again, I would ask your Honor

8     for the period of time from today going forth, until he

9     surrenders himself six weeks hence, that he be given

10    credit for the six-week period, whatever time that be.

11          THE COURT:  That request is denied.

12          As I said, I'm extending this period of time as

13    I did the time prior to sentencing, as an opportunity for

14    him.  But it should not be a substitute for jail.

15          There are other people that have not been given

16    that opportunity and for him to receive credit for that,

17    under these circumstances, I don't think is appropriate.

18    The time needs to reflect jail time, and not time spent at

19    a hospital.

20          I understand all these things are in my

21    discretion, and they are certainly things I can weigh

22    under 3553(a).  But it's my decision, in my discretion,

23    it's not warranted under all the facts of this case.

24          Mr. Bode, do I also need to enter the forfeiture

25    in the standard judgment that's also a portion for --

1        MR. BODE:  Yes.

2        THE COURT:  Should I attach this to the judgment

3   and say see attached?

4        MR. BODE:  If your Honor executes that and

5   attaches it to the judgment, that's exactly what the civil

6   division requests.

7        THE COURT:  Okay.

8        Mr. Saloy, please rise.

9        After considering the 3553 factors, it is the

10  judgment of this court that you be sentenced to the

11  custody of the Attorney General through the

12  Bureau of Prisons for a term of imprisonment of 41 months.

13  That term of imprisonment -- I impose a three-year period

14  of supervised release to follow that term of imprisonment,

15  with the standard conditions and the following special

16  conditions.

17        One, you shall participant in a mental health

18  treatment program which may include participation in a

19  treatment program for sexual disorders as approved by the

20  probation department.  You shall contribute to the cost of

21  such services rendered and/or any psychotropic medications

22  prescribed to the degree you are reasonably able, and you

23  shall cooperate in securing any applicable third-party

24  payment.

25        You shall disclose all financial information and

34

1    documents to the probation department to assess your

2    ability to pay.  As part of the treatment program for

3    sexual disorders, you shall participate in a polygraph

4    examination to obtain information necessary for risk

5    management and correctional treatment.

6              Two, you are not to use a computer, internet

7    capable device or similar electronic device to access

8    pornography of any kind.  This includes, but is not

9    limited to, accessing pornographic Web sites, Web sites

10   depicting images of nude adults or minors.  You shall not

11   use your computer to view pornography stored on a related

12   computer media, such as CDs or DVDs, and shall not

13   communicate via your computer with any individual or group

14   who promotes the sexual abuse of children.

15             You shall cooperate with the probation

16   department's computer and internet monitoring program.

17   Cooperation includes but is not limited to identifying

18   computer systems, internet capable devices and/or similar

19   electronic devices you have access to and allowing

20   installation of monitoring software/hardware devices at

21   your expense.

22             You shall inform the parties that access a

23   monitored computer or similar electronic device that the

24   device is subject to search and monitoring.  You are

25   limited to possessing only one personal internet capable

1   device to facilitate the probation department's object to

2   monitor your internet-related activities.  You shall

3   permit random examinations of your computer and internet

4   capable devices, similar electronic devices and related

5   computer media such as CDs under your control.

6       Three.  You shall have no unsupervised contact

7   with minors, unless there is approval by the parents and

8   the probation department.

9       Four.  You shall notify the probation department

10  when you establish a significant romantic relationship and

11  shall inform the other party of your prior criminal

12  history concerning your sex offenses.  You must notify the

13  probation department of that significant other's address,

14  age, and where the individual may be contacted.

15      Five.  You shall submit your person, residence,

16  place of business, vehicle or any other premises under

17  your control to a search on the basis that the probation

18  officer has reasonable belief that contraband or evidence

19  of a violation of the conditions of release may be found.

20  The search must be conducted in a reasonable manner and at

21  a reasonable time.  Failure to submit to search may be

22  grounds for revocation, and the defendant shall inform any

23  other resident that the premises may be subject to search

24  pursuant to this condition.

25      Six.  You shall not possess a firearm,

1    ammunition or destructive device.  I do not impose a fine

2    because of your inability to pay a fine and will not be

3    able to pay a fine in the future.

4         I impose the mandatory special assessment of

5    $100.

6         I order that you forfeit the following

7    properties that were seized on or about November 9, 2006,

8    one eMachine processing unit, Model T2824, serial number

9    QAZ4500200447, one eMachine computer processing unit,

10   Model T3882, serial number GDF5310008071, and 90 floppy

11   computer disks and one compact disk.

12        I recommend the following to the

13   Bureau of Prisons;

14        One, I recommend, to the extent eligible, that

15   the defendant be designated to FMC Devons to participate

16   in their treatment program, and, two, I recommend, to the

17   extent that he's not eligible for FMC Devons, that he be

18   designated to a minimum security facility, if consistent

19   with BOP regulations.

20        As I said before, the defendant will be released

21   and allowed to voluntarily surrender on June 16, 2008, by

22   2 p.m. to the designated facility.  All the bail

23   conditions that applied pending sentencing apply until his

24   date of surrender.

25        Mr. Saloy, to the extent that you have not

1  waived your right to appeal by virtue of your plea

2  agreement with the government, you have the right to

3  appeal your sentence.  If you are unable to pay the cost

4  of appeal, you may apply for leave to appeal

5  in forma pauperis.  If you cannot afford an attorney, one

6  will be appointed for you.

7         Notice of appeal must be filed within ten days

8  of the judgment of conviction which will probably be

9  issued on Monday.

10         Is there anything else for today?

11         MR. BODE:  No, your Honor.

12         THE COURT:  Anything from the defense?

13         MR. RUBIN:  No, your Honor.

14         THE COURT:  Thank you.

15         (The matter concluded.)

16

17

18

19

20

21

22

23

24

25

**$**

$100 [2] - 16:17; 36:5

**1**

100 [1] - 1:20
10:45 [1] - 1:7
11201 [1] - 1:14
11722 [1] - 1:21
1180 [1] - 1:20
12 [1] - 5:4
14 [2] - 11:21
16 [2] - 28:17; 36:21
17 [1] - 7:20
18 [2] - 5:1; 18:15
18-month [1] - 18:17
18th [2] - 3:3; 6:15

**2**

2 [2] - 1:6; 36:22
2004 [1] - 27:10
2006 [1] - 36:7
2008 [3] - 1:6; 28:17; 36:21
20th [1] - 2:18
215 [2] - 5:8; 11:17
22 [3] - 4:17, 25; 5:13
24 [1] - 23:2
25 [1] - 5:10
28th [1] - 3:1
2G2.2A5 [1] - 5:2
2G2.2B2 [1] - 5:3
2G2.2B6 [1] - 5:5
2G2.2B7B [1] - 5:7

**3**

30 [1] - 28:7
3143(a)(1 [2] - 27:5, 11
3143(a)(2 [1] - 27:3
3145 [1] - 27:7
3553 [1] - 33:9
3553(a [2] - 5:24; 15:15
3553(a) [2] - 9:13; 32:22
36 [1] - 23:2
360 [1] - 27:9
3E1.1 [1] - 5:12

**4**

40 [1] - 10:8
401 [1] - 27:9

**41** [7] - 4:18; 5:14; 14:19; 15:13; 20:18; 24:17; 33:12
47 [1] - 8:10

**5**

51 [2] - 4:18; 5:14

**6**

631 [2] - 1:20

**7**

712-6106 [1] - 1:20
712-6122 [1] - 1:21

**9**

9 [1] - 36:7
9/11 [1] - 10:20
90 [1] - 36:10

**A**

a.m [1] - 1:7
aback [1] - 19:6
abiding [1] - 16:4
ability [3] - 6:22; 26:15; 34:2
able [4] - 7:23; 24:11; 33:22; 36:3
absence [1] - 12:17
absent [1] - 15:11
Absent [1] - 20:13
Absolutely [1] - 23:16
abuse [6] - 8:12; 10:15; 13:1; 34:14
abused [1] - 12:10
accept [1] - 7:10
acceptable [1] - 7:7
acceptance [3] - 5:12; 15:3; 17:11
accepting [2] - 6:24; 26:17
access [5] - 14:1; 27:14; 34:7, 19, 22
accessing [1] - 34:9
According [1] - 4:15
account [1] - 14:13
accounts [1] - 15:14
Act [1] - 13:7
actions [3] - 7:25; 8:1, 14
activities [1] - 35:2
activity [1] - 18:12
actual [1] - 26:4

addenda [2] - 3:20; 4:1
addition [2] - 12:4; 16:6
additional [1] - 21:4
address [3] - 29:5; 30:10; 35:13
adept [1] - 23:11
adequate [2] - 9:18; 14:23
adequately [1] - 15:14
adjourn [1] - 21:9
adjusted [1] - 5:9
adopt [1] - 4:12
adults [2] - 11:23; 34:10
advise [1] - 29:21
advisory [11] - 4:15, 20, 23, 25; 5:14, 16; 9:22; 14:18; 15:8; 20:8
afford [3] - 9:18; 14:23; 37:5
afraid [1] - 22:7
age [3] - 5:4; 11:21; 35:14
agent [1] - 29:17
ages [1] - 11:20
agree [6] - 4:19, 24; 31:14-16, 23
agreed [1] - 31:9
agreement [4] - 8:24; 16:21; 31:3; 37:2
agrees [1] - 23:24
ahead [1] - 5:25
AIDS [1] - 11:2
Alan [1] - 2:4
ALAN [1] - 1:13
allow [10] - 7:8; 8:18; 18:20; 21:7; 24:8; 25:24; 26:3, 21; 27:22; 28:7
allowed [6] - 21:3, 25; 26:12; 27:3; 29:23; 36:21
allowing [2] - 7:20; 34:19
alluded [1] - 19:15
alternative [1] - 24:5
AMERICA [1] - 1:3
ammunition [2] - 16:15; 36:1
amputations [1] - 21:22
analog [1] - 20:1

ankle [1] - 20:2
apart [4] - 12:17; 13:8; 14:4, 7
apologize [2] - 8:3, 6
appeal [5] - 37:1, 3-4, 7
appearance [1] - 2:2
APPEARANCES [1] - 1:11
applicable [5] - 9:24; 10:4; 16:20; 33:23
application [1] - 22:15
applied [2] - 15:15; 36:23
apply [2] - 36:23; 37:4
appointed [1] - 37:6
appropriate [10] - 4:19; 8:15; 14:18; 19:21; 20:7; 21:9; 23:24; 27:7; 31:19; 32:17
approval [2] - 17:25; 35:7
approved [1] - 33:19
April [3] - 3:1, 3; 6:15
area [2] - 19:10; 24:13
areas [1] - 17:4
arguing [1] - 5:19
argument [2] - 25:24; 26:1
arguments [1] - 14:24
arraigning [1] - 31:8
arrangement [1] - 31:21
arrest [2] - 15:1; 30:4
aspects [1] - 8:16
assess [1] - 34:1
assessment [2] - 16:17; 36:4
associated [1] - 21:16
assured [1] - 11:10
attach [1] - 33:2
attached [2] - 2:25; 33:3
attaches [3] - 2:19; 3:2; 33:5
attack [5] - 18:14; 19:9, 12, 16
attempted [1] - 12:11
attorney [1] - 37:5
Attorney [2] - 18:13; 33:11

2

**ATTORNEY** [1] - 1:12
**audience** [1] - 30:19
**AUSA** [1] - 1:13
**auspices** [1] - 6:9
**avoid** [2] - 10:1; 27:20
**awarding** [1] - 5:11
**aware** [2] - 30:6, 8

**B**

**bail** [2] - 2:23; 36:22
**base** [1] - 5:1
**based** [5] - 5:23; 21:14; 22:3, 16, 18
**Based** [1] - 11:19
**basis** [1] - 35:17
**bear** [1] - 31:24
**become** [1] - 6:19
**BEFORE** [1] - 1:9
**begin** [1] - 7:19
**behalf** [2] - 6:5; 10:9
**behavior** [3] - 7:7; 19:8, 10
**belief** [1] - 35:18
**betrayed** [1] - 11:7
**beyond** [1] - 22:10
**BIANCO** [1] - 1:9
**board** [1] - 23:20
**Bode** [5] - 2:4; 8:21; 17:11; 18:5; 32:24
**BODE** [27] - 1:13; 2:4, 11; 3:9; 4:11, 21; 8:23; 16:23; 17:13; 18:2, 6; 22:14, 24; 23:19; 25:2, 6; 26:20; 28:8, 12, 23; 29:6; 30:17; 31:13; 32:4; 33:1, 4; 37:11
**Booker** [1] - 4:14
**BOP** [5] - 22:22, 24; 24:8; 25:10; 36:19
**Boston** [1] - 10:18
**boys** [1] - 12:3
**bracelet** [1] - 20:2
**brain** [1] - 8:15
**brief** [1] - 27:17
**Brooklyn** [1] - 1:14
**brought** [1] - 7:25
**build** [2] - 22:17
**Bureau** [8] - 18:20; 22:1; 24:19; 26:5; 28:18; 29:1; 33:12; 36:13
**business** [1] - 35:16

**BY** [1] - 1:13

**C**

**calculation** [3] - 4:16, 20, 24
**cancer** [1] - 10:23
**cannot** [3] - 12:6; 18:4; 37:5
**capable** [4] - 34:7, 18, 25; 35:4
**careful** [1] - 10:7
**carefully** [3] - 9:11; 10:6; 11:11
**caring** [1] - 10:15
**case** [10] - 2:1; 9:24; 10:4; 14:12, 18; 15:12, 15; 19:22; 20:10; 32:23
**CAT** [1] - 1:25
**category** [2] - 4:17; 5:14
**caused** [1] - 19:12
**CDs** [2] - 34:12; 35:5
**Center** [1] - 11:25
**Central** [2] - 1:5, 21
**Centre** [2] - 29:18; 30:22
**certain** [1] - 19:25
**certainly** [2] - 14:2; 32:21
**Certainly** [1] - 20:12
**cetera** [1] - 29:10
**challenging** [1] - 8:10
**characteristics** [1] - 9:15
**characterization** [1] - 6:18
**chat** [1] - 12:23
**chats** [1] - 12:3
**child** [16] - 5:6, 9; 6:19; 8:4, 11; 11:17; 12:16, 19, 21, 25; 13:3, 9, 11; 14:10; 19:13
**Child** [1] - 13:7
**children** [10] - 11:23; 12:10, 22; 13:1, 6, 10; 27:15; 34:14
**Children** [1] - 12:1
**choice** [2] - 21:12
**church** [1] - 8:6
**Circuit** [2] - 27:8
**circumstance** [1] - 28:4
**circumstances** [7] -

**6**:2, 12; 9:14; 18:10; 24:6; 26:24; 32:17
**City** [1] - 24:13
**civil** [1] - 33:5
**clarifications** [1] - 25:13
**clear** [4] - 10:9; 11:4; 13:5; 27:12
**clearly** [2] - 13:9; 27:6
**CLERK** [1] - 2:1
**client** [3] - 4:6; 22:4; 24:22
**closed** [1] - 29:22
**combination** [1] - 15:7
**comfort** [1] - 10:21
**commend** [1] - 13:19
**commission** [2] - 9:23, 25
**commit** [1] - 14:8
**communicate** [1] - 34:13
**community** [8] - 2:21; 10:13; 11:8; 13:5, 11; 15:5; 16:4; 27:17
**compact** [1] - 36:11
**compassion** [3] - 6:6
**complete** [3] - 15:24; 18:22; 21:2
**completes** [1] - 26:10
**completion** [2] - 6:20; 20:19
**complex** [1] - 19:16
**complexities** [1] - 19:18
**computer** [14] - 5:6; 25:15; 27:15; 34:6, 11-13, 16, 18, 23; 35:3, 5; 36:9, 11
**computers** [2] - 14:2; 16:10
**concerned** [2] - 6:18; 15:21
**concerning** [1] - 35:12
**concerns** [2] - 23:22; 30:2
**concluded** [1] - 37:15
**conclusion** [1] - 15:13
**condition** [4] - 16:15; 17:13, 15; 35:24
**conditions** [11] - 16:7; 25:13, 17; 27:4, 17; 29:10; 33:15; 35:19; 36:23

**conduct** [8] - 9:19; 11:9, 23; 12:2, 7; 13:23; 14:15, 23
**conducted** [1] - 35:20
**confines** [1] - 13:25
**Congress** [3] - 9:12; 12:18; 13:3
**Connecticut** [1] - 23:5
**connection** [7] - 3:8; 5:23; 7:15, 17; 8:22; 11:10; 12:2
**consider** [6] - 5:17; 10:1; 11:14; 14:8; 23:14
**consideration** [1] - 13:21
**considered** [9] - 9:12, 22; 11:11; 14:6, 16, 24; 15:4, 10; 19:4
**considering** [1] - 33:9
**consistent** [4] - 22:22, 24; 25:10; 36:18
**consisting** [1] - 5:1
**contact** [4] - 16:25; 17:5, 24; 35:6
**contacted** [1] - 35:14
**contained** [1] - 4:12
**contemplated** [1] - 22:10
**continue** [7] - 7:9; 8:18; 15:23; 16:2; 20:13; 29:16; 31:22
**continued** [1] - 27:4
**continuing** [3] - 6:20; 28:4; 31:6
**contraband** [1] - 35:18
**contribute** [1] - 33:20
**control** [3] - 26:8; 35:5, 17
**conviction** [1] - 37:8
**convincing** [1] - 27:12
**cooperate** [2] - 33:23; 34:15
**Cooperation** [1] - 34:17
**copy** [2] - 3:19, 25
**Correct** [1] - 29:13
**correct** [4] - 19:24; 20:21, 24; 28:22
**correctional** [1] - 34:5
**cost** [7] - 18:14; 25:22; 31:15, 24; 33:20; 37:3

3

Counsel [1] - 2:2
counsel [2] - 9:3; 23:14
counsel's [1] - 23:20
court [20] - 4:13; 6:6, 13; 7:2, 10, 20; 8:2, 6; 9:1; 18:16, 18, 20; 21:20, 24; 22:3; 26:2; 29:12, 21; 31:10; 33:10
COURT [54] - 1:1, 9; 2:8, 13; 3:12, 18, 23; 4:3, 6, 9, 12, 23; 7:13; 8:20; 9:4, 7; 17:2, 11, 23; 18:3, 7; 19:4; 20:4, 22, 25; 22:12, 19; 23:17; 24:1, 7, 23; 25:4, 7, 19; 26:9, 18, 21; 28:10, 16, 24; 29:4; 30:1, 11, 15, 19, 25; 31:17; 32:2, 6, 11; 33:2, 7; 37:12, 14
Court [1] - 1:20
court's [2] - 8:25; 26:20
Courthouse [1] - 1:5
CR-06-776 [1] - 1:4
create [1] - 28:3
created [1] - 12:20
creates [2] - 12:21; 13:4
credit [4] - 18:16; 19:20; 32:10, 16
crime [5] - 12:13, 18; 13:13; 20:10; 23:7
crimes [1] - 9:20
criminal [10] - 4:17; 5:13; 9:19; 11:9; 12:7; 14:15, 23; 15:1; 16:14; 35:11
criteria [2] - 27:2, 11
custodial [4] - 6:9; 18:15, 21; 26:6
custody [3] - 22:15, 20; 33:11

**D**

D-E-V-O-N-S [1] - 25:3
daily [1] - 23:6
danger [2] - 13:6; 27:16
Daniel [1] - 30:21
date [4] - 28:5, 16, 21; 36:24

dated [1] - 3:3
daughter [1] - 10:23
days [2] - 28:7; 37:7
dealing [2] - 18:25; 23:11
death [1] - 10:15
decision [1] - 32:22
decisions [1] - 8:16
deemed [1] - 12:18
deeper [1] - 19:15
defendant [28] - 2:6, 22; 5:5, 11; 6:4, 19; 9:20; 12:2, 9, 18; 14:5; 17:8; 19:19; 23:1, 3, 13; 24:25; 25:23; 27:2; 28:13; 29:19, 22; 31:14, 23; 35:22; 36:15, 20
DEFENDANT [3] - 4:2, 5; 7:19
Defendant [2] - 1:7, 16
defendant's [2] - 2:20; 18:11
defendants [1] - 10:3
defense [2] - 9:2; 37:12
defies [1] - 19:11
degree [1] - 33:22
demand [1] - 12:19
demonstrated [1] - 28:1
denied [1] - 32:11
department [11] - 4:24; 17:16, 21; 18:1, 13; 28:8; 33:20; 34:1; 35:8, 13
department's [2] - 34:16; 35:1
departure [2] - 15:8; 20:7
depicted [1] - 11:20
depicting [1] - 34:10
depression [1] - 30:9
deputy [1] - 29:3
describe [1] - 9:7
described [1] - 30:24
describes [1] - 10:22
designate [2] - 24:19; 29:1
designated [13] - 22:22; 24:12; 25:1, 9; 26:13, 22, 25; 27:22; 28:17, 19; 36:15, 18,

22
designation [2] - 26:4; 28:5
desire [2] - 26:22; 27:20
desires [1] - 23:24
destroy [1] - 19:2
destructive [2] - 16:16; 36:1
details [1] - 25:19
detention [1] - 27:7
deter [1] - 14:14
determination [1] - 17:22
determines [1] - 22:1
deterrence [6] - 9:18; 14:5, 7, 23; 15:17; 20:17
device [7] - 16:16; 34:7, 23-24; 35:1; 36:1
devices [5] - 34:18-20; 35:4
Devons [3] - 23:5; 25:1, 9; 26:24; 36:15, 17
diabetes [1] - 21:22
dialogue [1] - 31:5
dictated [1] - 29:15
different [1] - 10:14
Diocese [3] - 29:18; 30:22
diocese [6] - 31:5-7, 12, 15, 17
director [1] - 31:7
disappointed [1] - 18:24
disclose [1] - 33:25
discretion [6] - 8:25; 14:17; 15:6; 26:20; 32:21
discuss [1] - 4:4
discussed [3] - 3:21; 27:20, 23
disk [1] - 36:11
disks [1] - 36:11
disorders [2] - 33:19; 34:3
disparities [1] - 10:2
distribution [3] - 12:17, 25; 13:9
DISTRICT [3] - 1:1, 9
division [1] - 33:6
documents [1] - 34:1
done [1] - 12:14

down [1] - 28:13
drove [1] - 10:18
during [3] - 10:18; 13:16; 19:24
DVDs [1] - 34:12
dying [1] - 11:1

**E**

EASTERN [1] - 1:1
efforts [6] - 13:19; 14:25; 15:22; 16:3; 27:22
either [3] - 14:10; 26:22; 28:20
elderly [2] - 21:21; 24:10
elect [2] - 23:1, 3
electronic [5] - 29:10; 34:7, 19, 23; 35:4
eligible [4] - 24:25; 25:8; 36:14, 17
eMachine [2] - 36:8
emphasize [1] - 12:6
employ [1] - 29:17
encouraged [1] - 14:2
end [1] - 13:6
engaged [2] - 11:23; 12:3
engaging [2] - 11:9; 14:14
enter [1] - 32:24
entire [1] - 13:2
entitled [1] - 7:16
environment [1] - 8:10
escort [2] - 29:11; 30:23
especially [2] - 6:15; 11:2
ESQ [2] - 1:12, 16
establish [2] - 11:1; 35:10
establishes [1] - 16:12
et [1] - 29:10
events [2] - 7:23; 8:10
evidence [5] - 12:9, 11; 19:9; 27:12; 35:18
evil [1] - 8:5
exactly [1] - 33:5
examination [1] - 34:4
examinations [1] - 35:3

4

**exceptional** [5] - 26:24; 27:6, 19, 24; 28:4
**exchanged** [1] - 12:24
**executes** [1] - 33:4
**exercise** [1] - 14:17
**Exhibit** [1] - 2:17
**existence** [2] - 12:22; 13:3
**expects** [1] - 29:22
**expense** [1] - 34:21
**explaining** [1] - 10:20
**explicit** [1] - 11:23
**exploitation** [1] - 12:22
**Exploited** [1] - 12:1
**exponentially** [1] - 12:24
**expressed** [1] - 15:2
**extending** [1] - 32:12
**extension** [1] - 28:21
**extent** [8] - 22:21; 24:10, 25; 25:8; 36:14, 17, 25
**extraordinarily** [1] - 10:10
**extraordinary** [2] - 13:18; 21:7
**extreme** [1] - 12:25
**extremely** [4] - 11:16, 18; 12:13; 13:12

**F**

**F.3d** [1] - 27:9
**facilitate** [2] - 26:16; 35:1
**facilitates** [1] - 13:10
**facilities** [4] - 24:8; 26:13, 16; 27:23
**facility** [20] - 22:2, 5-6, 8, 23; 24:20; 25:10; 26:4, 12, 23, 25; 27:21, 23; 28:17, 19; 29:1, 9, 20; 36:18, 22
**fact** [5] - 15:20; 18:11; 20:9; 22:9; 31:11
**factor** [2] - 10:1; 11:14
**factors** [10] - 5:18, 24; 9:12; 14:16; 15:7, 10-11, 15; 33:9

**facts** [1] - 32:23
**factual** [1] - 4:13
**Failure** [1] - 35:21
**family** [5] - 8:7; 10:21; 17:12; 24:9, 20
**far** [3] - 6:18; 17:4; 24:21
**fashion** [1] - 14:12
**father** [1] - 21:21
**favor** [1] - 26:25
**Fax** [1] - 1:21
**FBI** [1] - 29:17
**FCI** [1] - 25:1
**FCRR** [1] - 1:20
**Federal** [1] - 1:20
**few** [1] - 3:4
**file** [1] - 3:15
**filed** [1] - 37:7
**fill** [1] - 28:14
**filled** [1] - 10:12
**final** [3] - 9:1, 9; 16:21
**finally** [1] - 9:10
**financial** [1] - 33:25
**findings** [1] - 4:13
**fine** [6] - 16:18; 18:2; 36:1
**fir** [1] - 18:19
**firearm** [2] - 16:15; 35:25
**First** [1] - 19:6
**first** [5] - 6:13, 21; 21:12; 31:11
**fit** [2] - 18:16; 24:19
**Five** [1] - 35:15
**fixed** [1] - 26:5
**flee** [1] - 27:15
**floor** [1] - 28:13
**floppy** [1] - 36:10
**FMC** [6] - 23:4; 25:2, 9; 26:23; 36:15, 17
**focus** [1] - 7:23
**focused** [1] - 30:12
**follow** [1] - 33:14
**following** [5] - 5:1; 16:8; 33:15; 36:6, 12
**forfeit** [1] - 36:6
**forfeiture** [4] - 9:2; 16:20, 22; 32:24
**forma** [1] - 37:5
**forth** [5] - 9:12; 25:17; 27:5, 8; 32:8
**forward** [1] - 13:17

**foundation** [1] - 21:14
**Four** [1] - 35:9
**free** [1] - 19:23
**front** [1] - 31:8
**future** [2] - 14:11; 36:3

**G**

**GDF5310008071** [1] - 36:10
**general** [2] - 14:6; 23:9
**General** [1] - 33:11
**generally** [2] - 16:24; 17:13
**genuine** [1] - 15:2
**GIBBONS** [2] - 30:20; 32:1
**Gibbons** [1] - 30:21
**given** [8] - 9:2; 10:5; 18:24; 23:10; 24:5; 32:9, 15
**government** [7] - 2:4; 4:9; 8:21; 15:5; 22:12; 26:18; 37:2
**Government** [1] - 1:12
**graphic** [1] - 11:18
**great** [1] - 10:21
**grounds** [3] - 5:20; 19:24; 35:22
**group** [1] - 34:13
**guess** [1] - 26:7
**guideline** [5] - 4:17, 20, 25; 14:18; 15:9
**guidelines** [3] - 4:15; 9:23; 12:15

**H**

**half** [9] - 6:8; 7:6, 22; 12:5; 19:2; 20:20; 21:7, 14; 27:25
**halfway** [6] - 3:3; 7:9; 18:21; 20:23, 25; 26:3
**hand** [1] - 9:1
**hands** [1] - 8:12
**happy** [1] - 6:17
**hard** [1] - 17:18
**hard-pressed** [1] - 17:18
**harm** [1] - 13:5
**health** [4] - 16:9; 25:14, 21; 33:17
**heard** [2] - 7:14; 8:21
**hearing** [1] - 31:11

**heart** [5] - 18:14; 19:9, 12, 16
**help** [1] - 30:6
**helped** [2] - 10:13, 25
**hence** [1] - 32:9
**higher** [1] - 15:11
**himself** [1] - 32:9
**history** [9] - 4:17; 5:14; 9:14; 16:14; 18:24; 22:4; 30:6, 8; 35:12
**home** [1] - 11:1
**Honor** [42] - 2:5, 11-12; 3:9, 11, 17, 22; 4:2, 8, 11, 21-22; 6:1, 16, 21; 7:8, 19; 8:23; 9:6; 16:23; 17:3, 15; 18:2, 6, 8; 20:21; 21:19; 23:16; 24:16; 25:11; 26:19, 14, 23; 30:17, 20; 32:1, 4, 7; 33:4; 37:11, 13
**HONORABLE** [1] - 1:9
**hope** [1] - 26:13
**hopeful** [5] - 13:21; 15:22; 16:2; 21:13; 30:2
**Hopefully** [1] - 28:24
**hopefully** [2] - 16:4; 30:10
**hoping** [1] - 19:17
**horrific** [1] - 12:21
**hospital** [9] - 10:14; 13:25; 15:1; 19:21, 23; 27:14; 28:1; 30:6; 32:19
**House** [1] - 11:1
**house** [7] - 3:3; 7:9; 15:1; 18:21; 20:23, 25; 26:3
**housed** [1] - 27:21

**I**

**idea** [1] - 26:10
**ideal** [1] - 24:6
**identified** [1] - 11:25
**identifying** [1] - 34:17
**ill** [1] - 21:21
**illnesses** [1] - 10:14
**images** [7] - 5:8; 11:17, 22, 24; 12:16; 34:10
**immediately** [1] -

24:19

**impact** [3] - 8:14; 10:10; 15:21
**impacted** [1] - 11:5
**impart** [1] - 6:23
**impose** [14] - 9:8; 16:6, 8-9, 11, 14, 16, 18; 18:4; 30:16; 32:3; 33:13; 36:1, 4
**imposed** [6] - 9:10, 16; 15:12; 16:1; 27:13; 30:5
**imposing** [2] - 9:11; 24:17
**imprisonment** [4] - 15:14; 33:12
**inability** [2] - 16:19; 36:2
**inappropriate** [1] - 19:8
**incarcerated** [1] - 24:4
**incarceration** [2] - 15:21; 21:2
**incident** [1] - 28:1
**inclined** [1] - 7:11
**include** [5] - 9:13; 10:7; 11:22; 25:22; 33:18
**included** [2] - 5:3; 11:20
**includes** [2] - 34:8, 17
**including** [6] - 11:22; 14:25; 15:16; 20:17; 25:21; 27:13
**incorporate** [1] - 25:19
**increase** [3] - 5:2, 4, 7
**independently** [1] - 3:4
**indicate** [1] - 7:2
**indicated** [2] - 17:7; 28:12
**indicates** [1] - 28:9
**individual** [4] - 6:8; 22:9; 34:13; 35:14
**individually** [1] - 15:7
**individuals** [3] - 12:20; 14:9, 14
**industry** [1] - 13:2
**inform** [3] - 34:22;

35:11, 22
**information** [3] - 4:12; 33:23; 34:4
**informing** [1] - 16:13
**inherent** [1] - 13:1
**initial** [2] - 31:3, 8
**inmates** [1] - 22:8
**installation** [1] - 34:20
**Institute** [3] - 6:10; 7:21; 8:19
**institute** [2] - 6:15, 23
**intend** [10] - 9:8; 14:19; 16:6, 8-9, 11, 14, 16, 18, 20
**intention** [2] - 25:23, 25
**interested** [1] - 23:13
**internet** [8] - 12:12, 22; 34:6, 16, 18, 25; 35:2
**internet-related** [1] - 35:2
**involved** [3] - 5:8; 11:17; 14:10
**Island** [3] - 8:3; 10:11; 11:2
**Islip** [2] - 1:5, 21
**issue** [5] - 14:6; 19:18; 26:22; 30:10; 31:14
**issued** [3] - 9:23, 25; 37:9
**issues** [7] - 5:22; 14:4; 17:17; 19:13; 30:3
**items** [1] - 16:20

**J**

**jail** [9] - 13:25; 15:23; 16:3; 20:6, 10; 21:11, 16; 32:14, 18
**JFB** [1] - 1:4
**join** [1] - 16:3
**JOSEPH** [1] - 1:9
**journey** [1] - 10:23
**Judge** [3] - 6:11; 29:15; 31:9
**JUDGE** [1] - 1:9
**judgment** [6] - 9:3; 32:25; 33:2, 5, 10; 37:8
**jumps** [1] - 11:3

**June** [2] - 28:16; 36:21
**justifies** [1] - 28:4

**K**

**keep** [1] - 23:25
**kind** [1] - 34:8
**knowledge** [1] - 3:9
**known** [1] - 11:25
**Krista** [1] - 11:1

**L**

**lack** [1] - 15:1
**last** [2] - 7:5; 23:2
**law** [6] - 5:18; 9:17; 14:22; 15:18; 16:4; 27:1
**law-abiding** [1] - 16:4
**lawyer** [1] - 27:22
**Lea** [1] - 27:9
**LEA** [1] - 27:9
**least** [5] - 6:20; 7:3; 18:12, 22; 19:1
**leave** [3] - 8:24; 26:20; 37:4
**legal** [2] - 9:9; 18:4
**letter** [10] - 2:18; 3:1; 6:15; 7:16; 10:17, 19, 21, 25; 15:3; 29:4
**letters** [8] - 2:20, 25; 3:4, 16; 10:8, 12; 11:4
**letting** [1] - 21:9
**level** [8] - 4:17; 5:1, 4, 7, 9, 11, 13
**liberty** [2] - 19:23; 20:3
**life** [3] - 8:11, 16; 18:14
**light** [1] - 5:17
**likelihood** [1] - 13:22
**likely** [2] - 23:9; 27:15
**limited** [4] - 26:11; 34:9, 17, 25
**line** [1] - 12:3
**listed** [1] - 16:21
**litany** [1] - 21:22
**liver** [1] - 10:19
**lives** [2] - 10:10; 11:5
**location** [2] - 23:8, 22
**logic** [1] - 19:11
**Lombardi** [1] - 1:20
**look** [3] - 8:10; 11:14;

28:25

5

**looked** [1] - 8:13
**looking** [3] - 8:1, 14; 12:15
**lost** [1] - 10:20
**love** [1] - 11:2
**loved** [1] - 10:15
**Luke's** [4] - 6:10, 17; 7:21; 8:19

**M**

**Magistrate** [2] - 29:15; 31:9
**magnified** [1] - 12:24
**mail** [1] - 3:5
**main** [1] - 21:3
**major** [2] - 7:23
**majority** [1] - 11:21
**management** [1] - 34:5
**mandatory** [3] - 5:17; 16:17; 36:4
**manner** [1] - 35:20
**market** [1] - 12:21
**marshal's** [1] - 28:12
**marshals** [2] - 28:22; 29:8
**Maryland** [1] - 20:2
**Massachusetts** [1] - 23:5
**material** [1] - 5:3
**matter** [1] - 37:15
**mature** [1] - 8:16
**MAUSKOPF** [1] - 1:12
**maximum** [3] - 22:1; 24:16; 27:21
**mechanical** [1] - 1:24
**media** [2] - 34:12; 35:5
**medication** [2] - 30:9
**medications** [1] - 33:21
**meet** [1] - 30:7
**member** [1] - 16:5
**members** [3] - 10:13; 17:12; 24:9
**memorandum** [2] - 2:16; 7:1
**mental** [4] - 16:8; 25:14, 21; 33:17
**mentioned** [1] - 19:5
**mercy** [1] - 6:7
**message** [1] - 14:13
**met** [1] - 27:5
**might** [7] - 7:6; 19:2;

22:9, 16; 23:14; 24:19; 31:13
**mind** [1] - 24:5
**mind-set** [1] - 24:5
**minimizes** [1] - 12:13
**minimum** [5] - 22:6, 23; 25:9; 26:23; 36:18
**minors** [6] - 5:4; 16:25; 17:5, 25; 34:10; 35:7
**Missing** [1] - 12:1
**mitigating** [1] - 15:10
**mitigation** [1] - 14:25
**Model** [2] - 36:8, 10
**Monday** [2] - 29:24; 37:9
**monitor** [1] - 35:2
**monitored** [1] - 34:23
**monitoring** [5] - 29:10, 25; 34:16, 20, 24
**months** [11] - 4:18; 5:15; 7:21; 14:19; 15:14; 18:15, 23; 20:18; 23:2; 24:17; 33:12
**morning** [2] - 2:5, 8
**most** [2] - 3:2; 27:8
**mother** [4] - 10:17, 20, 22; 21:22
**MR** [57] - 2:4, 6, 11-12; 3:9, 17, 22; 4:8, 11, 21-22; 6:1; 8:23; 9:6; 16:23; 17:3, 13; 18:2, 6, 8; 19:25; 20:21, 24; 21:19; 22:14, 24; 23:16, 19; 24:3, 14; 25:2, 6, 11; 26:1, 15, 20; 28:8, 12, 23; 29:3, 6, 14; 30:8, 14, 17, 20; 31:3, 13, 25; 32:1, 4, 7; 33:1, 4; 37:11, 13
**must** [7] - 5:17; 9:12; 10:1; 11:14; 35:12, 20; 37:7

**N**

**name** [1] - 30:21
**National** [1] - 11:25
**nature** [3] - 9:13; 12:13; 13:12
**nearly** [1] - 18:14
**necessary** [3] - 14:20; 20:17; 34:4

**need** [10] - 5:18; 9:15; 10:1; 11:14; 14:12; 15:16; 17:10; 31:24; 32:24
**needs** [6] - 7:3; 13:12; 16:1; 21:18; 28:13; 32:18
**nephews** [2] - 17:5, 9
**never** [2] - 17:8; 31:17
**NEW** [1] - 1:1
**New** [4] - 1:5, 14, 21; 24:12
**nieces** [2] - 17:6, 9
**None** [1] - 9:6
**nonetheless** [1] - 2:24
**nonguideline** [3] - 5:19; 15:9; 20:8
**normal** [1] - 6:1
**note** [1] - 23:1
**noted** [2] - 13:3; 30:4
**Notice** [1] - 37:7
**notify** [3] - 30:14; 35:9, 12
**notifying** [1] - 16:12
**November** [2] - 2:18; 36:7
**nude** [1] - 34:10
**number** [3] - 5:20; 36:8, 10
**numerous** [1] - 2:20

**O**

**object** [1] - 35:1
**objection** [4] - 9:4, 9; 22:13; 26:19
**objections** [2] - 4:7, 10
**obtain** [1] - 34:4
**obvious** [1] - 12:19
**obviously** [14] - 2:21; 7:15; 11:15; 12:14; 15:20; 20:6; 21:15; 23:8, 11; 24:8; 27:24; 29:24; 31:4, 22
**Obviously** [5] - 5:16; 13:24; 21:12; 24:3; 30:12
**OF** [3] - 1:1, 3, 8
**offense** [13] - 5:1, 8-9, 13; 9:14, 16, 18; 11:15; 14:8, 21-22; 15:16
**offenses** [1] - 35:12
**office** [3] - 6:4;

18:13; 26:15
**OFFICER** [1] - 25:12
**officer** [1] - 35:18
**Officer** [1] - 17:6
**Official** [1] - 1:20
**on-line** [1] - 12:3
**once** [2] - 7:2; 18:10
**Once** [1] - 32:7
**one** [14] - 7:24; 9:8; 10:8, 15; 11:21; 12:5; 26:13, 16; 34:25; 36:8, 11; 37:5
**One** [4] - 1:13; 24:24; 33:17; 36:14
**ones** [2] - 2:24; 3:4
**opportunity** [5] - 5:21; 8:9; 9:9; 32:13, 16
**order** [8] - 9:2; 16:20, 22; 18:22; 30:22, 25; 31:17; 36:6
**orders** [1] - 31:2
**Orenstein** [1] - 29:15; 31:9
**otherwise** [1] - 15:12
**outlined** [1] - 28:2
**outside** [1] - 13:25
**outweighed** [1] - 24:21

**P**

**p.m** [1] - 36:22
**pages** [1] - 11:4
**papers** [2] - 12:9; 19:7
**paperwork** [2] - 28:14; 29:8
**parameters** [1] - 24:17
**parents** [7] - 17:7, 17, 25; 21:21; 24:10; 35:7
**parishioners** [2] - 10:13; 11:8
**part** [2] - 9:3; 34:2
**participant** [1] - 33:17
**participate** [3] - 25:4; 34:3; 36:15
**participation** [1] - 33:18
**parties** [7] - 2:15; 3:8; 4:25; 9:8; 21:20; 31:14; 34:22
**party** [3] - 16:13; 33:23; 35:11
**past** [2] - 7:22; 31:1
**Paul** [1] - 1:20

**pauperis** [1] - 37:5
**pay** [8] - 16:19; 30:23; 31:12, 18; 34:2; 36:2; 37:3
**payment** [1] - 33:24
**pending** [2] - 28:5; 36:23
**people** [8] - 3:5; 8:3; 10:11; 11:3, 5; 24:18; 32:15
**performed** [1] - 11:12
**perhaps** [1] - 24:18
**period** [14] - 12:4; 13:18; 16:24; 18:17; 19:24; 20:15; 21:25; 27:17, 25; 32:8, 10, 12; 33:13
**periodically** [1] - 2:22
**permit** [1] - 35:3
**person** [2] - 27:16; 35:15
**personal** [1] - 34:25
**personnel** [1] - 31:8
**persons** [2] - 23:6, 10
**PETER** [1] - 1:16
**Peter** [1] - 2:6
**petite** [1] - 22:9
**Ph** [1] - 1:20
**phone** [1] - 20:1
**photographs** [2] - 5:3; 12:23
**physical** [1] - 13:1
**physically** [1] - 12:10
**Pierrepont** [1] - 1:13
**place** [3] - 7:5; 12:4; 35:16
**Plaza** [2] - 1:13, 20
**plea** [5] - 8:23; 15:2; 16:21; 20:12; 37:1
**point** [3] - 16:1; 19:1; 20:22
**pointed** [1] - 12:8
**policy** [1] - 9:25
**polygraph** [1] - 34:3
**poor** [2] - 10:16; 11:1
**population** [2] - 23:10, 12
**pornographic** [1] - 34:9
**Pornography** [1] - 13:7
**pornography** [16] - 5:6, 9; 8:4; 11:18; 12:17, 20-21, 25; 13:4,

9; 12; 14:10; 19:13; 34:8, 11
**portion** [1] - 32:25
**pose** [1] - 27:16
**position** [2] - 6:3; 26:2
**positive** [2] - 10:10; 11:5
**possess** [6] - 5:6; 8:5; 12:20; 13:11; 16:15; 35:25
**possessing** [2] - 14:11; 34:25
**possession** [5] - 5:8; 8:4; 12:4, 16; 13:8
**possible** [3] - 15:24; 22:2; 24:12
**poster** [1] - 6:19
**potential** [1] - 13:4
**preclude** [1] - 24:14
**premises** [2] - 35:16, 23
**prepared** [1] - 7:10
**prepubescent** [2] - 11:22, 24
**prescribed** [1] - 33:22
**present** [1] - 13:5
**presentence** [5] - 3:20, 25; 4:13, 16; 19:14
**presentencing** [1] - 22:5
**presents** [1] - 13:5
**pressed** [1] - 17:18
**pretrial** [3] - 20:1; 26:7; 29:21
**Prevention** [1] - 13:7
**priest** [2] - 10:11; 31:7
**prison** [1] - 26:23
**Prisons** [8] - 18:20; 22:1; 24:19; 26:5; 28:18; 29:1; 33:12; 36:13
**privacy** [1] - 3:13
**PROBATION** [1] - 25:12
**probation** [22] - 4:24; 11:19; 16:12, 23; 17:16, 21; 18:1, 13; 22:4; 25:12, 20; 28:8; 33:20; 34:1, 15; 35:1, 8-9, 13, 17
**Probation** [1] - 17:6
**problem** [2] - 12:24;

22:25
**problems** [1] - 17:8
**procedures** [1] - 31:8
**proceed** [1] - 2:10
**Proceedings** [1] - 1:24
**process** [1] - 30:13
**processing** [2] - 36:8
**produced** [1] - 1:25
**productive** [1] - 16:4
**proffer** [1] - 15:4
**program** [15] - 6:21; 16:9; 18:22; 19:1; 21:3; 23:4, 6; 24:15, 17; 25:5; 33:18; 34:2, 16; 36:16
**programs** [1] - 21:11
**progress** [10] - 2:19, 22; 3:13; 6:14, 25; 13:15, 20; 14:2; 28:2
**prolonging** [1] - 21:6
**promote** [3] - 9:17; 14:21; 15:18
**promotes** [1] - 34:14
**proper** [1] - 15:18
**properties** [1] - 36:7
**proposed** [2] - 9:1; 16:21
**protect** [1] - 9:19
**protective** [2] - 22:15, 20
**provide** [4] - 9:17, 20; 14:22; 15:17
**provision** [1] - 25:22
**psychotropic** [1] - 33:21
**public** [3] - 3:14; 8:2; 9:19
**punishment** [6] - 9:18; 13:11; 14:22; 15:17; 16:1; 22:10
**purely** [1] - 23:2
**purpose** [1] - 21:5
**pursuant** [3] - 4:14; 8:23; 35:24
**put** [7] - 19:1; 22:6; 24:24; 25:16; 29:4, 7

**Q**

**QAZ4500200447** [1] - 36:9
**questions** [1] - 25:18
**quote** [3] - 10:22; 13:4, 6

**R**

**R-U-B-I-N** [1] - 2:7
**raise** [1] - 5:22
**random** [1] - 35:3
**range** [9] - 4:17, 20, 25; 5:14, 16; 9:24; 14:18; 15:9; 20:8
**ranging** [2] - 11:20
**read** [1] - 22:14
**reading** [1] - 19:14
**ready** [1] - 2:10
**realize** [1] - 8:11
**realizing** [2] - 8:1, 5
**reason** [4] - 3:12, 15, 17; 18:4
**reasonable** [3] - 35:18, 20
**reasonably** [1] - 33:22
**reasons** [4] - 3:14; 12:19; 27:6, 19
**receive** [2] - 7:21; 32:16
**received** [9] - 2:14, 24; 3:1, 4, 19, 23, 25; 7:15; 8:12
**receiving** [1] - 2:21
**recent** [1] - 3:2
**recently** [1] - 27:8
**recipient** [1] - 6:24
**recited** [1] - 22:4
**recognize** [2] - 12:8; 13:14
**recommend** [7] - 24:11, 25; 25:8; 31:13; 36:12, 14, 16
**recommendation** [9] - 8:24; 21:24; 22:3, 25; 23:15, 17, 21; 25:7, 17
**recommendations** [1] - 24:24
**recommends** [1] - 25:20
**record** [5] - 2:3; 15:2; 17:20; 25:16; 29:7
**recorded** [1] - 1:24
**reduced** [1] - 13:22
**reduction** [1] - 5:12
**reflect** [5] - 9:16; 13:12; 14:20; 19:17; 32:18
**regarding** [4] - 16:11; 26:22; 28:14; 31:2
**regress** [1] - 21:16
**regular** [1] - 30:6

**regulations** [3] - 22:22; 25:10; 36:19
**rehabilitate** [2] - 19:18; 21:15
**rehabilitation** [10] - 9:21; 13:16; 14:25; 15:17, 19, 22, 25; 16:2; 20:14
**reimburse** [1] - 31:15
**reiterate** [1] - 8:17
**reiterated** [1] - 19:7
**rejecting** [1] - 26:9
**related** [3] - 34:11; 35:2, 4
**relating** [1] - 27:20
**relationship** [2] - 16:13; 16:15
**relatively** [1] - 6:3
**release** [13] - 16:3, 7, 24; 17:22; 25:14, 18; 27:2, 4-5; 28:5; 29:16; 33:14; 35:19
**released** [2] - 27:3; 36:20
**religious** [2] - 6:12; 18:25
**rely** [1] - 6:2
**remanded** [1] - 25:23
**remission** [1] - 7:7
**remorse** [1] - 15:2
**rendered** [1] - 33:21
**repetitive** [1] - 2:24
**replace** [1] - 29:24
**replete** [1] - 6:3
**report** [15] - 3:2, 20; 4:1, 7, 10, 13, 16; 11:19; 17:7; 19:14; 22:5; 28:20; 29:23
**reported** [3] - 6:14; 17:6; 21:20
**Reporter** [1] - 1:20
**reports** [6] - 2:19, 22-23; 3:13; 6:22; 13:15
**represent** [2] - 30:21; 31:5
**represented** [2] - 6:12; 8:7
**representing** [1] - 6:4
**request** [4] - 22:3; 25:16; 26:11; 32:11
**requests** [2] - 25:13; 33:6
**required** [1] - 31:10

**requirements** [1] - 24:22

**residence** [1] - 35:15

**resident** [1] - 35:23

**resolution** [1] - 24:6

**resort** [2] - 13:23; 14:5

**respect** [6] - 9:17; 14:21; 15:18; 25:21; 27:11

**respectfully** [1] - 18:9

**responsibility** [4] - 5:12; 7:24; 15:4; 29:19

**restitution** [1] - 16:19

**Restitution** [1] - 10:3

**restricted** [1] - 20:3

**restriction** [1] - 16:11

**restrictions** [5] - 16:9; 19:22; 25:15, 20; 27:13

**result** [2] - 19:16; 30:2

**results** [1] - 5:13

**retired** [1] - 29:17

**return** [3] - 18:21; 26:3; 29:23

**review** [2] - 4:4; 10:7

**reviewed** [3] - 3:20; 7:16; 13:15

**reviewing** [1] - 10:6

**revocation** [1] - 35:22

**rewire** [1] - 8:15

**rise** [1] - 33:8

**risk** [1] - 34:4

**RMR** [1] - 1:20

**Rockville** [2] - 29:18; 30:22

**romantic** [2] - 16:13; 35:10

**rooms** [1] - 12:23

**ROSLYNN** [1] - 1:12

**Rubin** [24] - 2:6, 8, 19; 3:2, 12, 19; 4:4, 6; 5:18, 25; 7:13; 8:18; 9:4; 12:8; 15:20; 18:7; 19:4; 20:20; 24:2; 25:24; 28:20; 30:24; 31:24; 32:6

**RUBIN** [30] - 1:16; 2:6, 12; 3:10, 17, 22; 4:8, 22; 6:1; 9:6; 17:3;

18:8; 19:25; 20:21, 24; 21:19; 23:16; 24:3, 14; 25:11; 26:1, 15; 29:3, 14; 30:8, 14; 31:3, 25; 32:7; 37:13

**Rubin's** [2] - 2:16; 3:4

**rules** [1] - 29:16

---

**S**

**safe** [3] - 8:9; 23:9, 22

**safety** [2] - 23:21; 27:16

**SALOY** [1] - 1:6

**Saloy** [22] - 2:1; 3:6, 21, 23-24; 6:5; 7:9, 14; 8:20; 9:15; 10:18, 22; 11:3; 13:14, 19; 14:7, 19; 19:14; 23:24; 29:7; 33:8; 36:25

**Saloy's** [2] - 10:8; 15:21

**satisfy** [1] - 27:2

**search** [6] - 16:14; 34:24; 35:17, 20-21, 23

**seated** [1] - 3:24

**Second** [2] - 27:8

**second** [1] - 25:7

**Secondly** [2] - 8:8; 18:18

**Section** [5] - 5:2; 9:13; 27:3, 7

**securing** [1] - 33:23

**security** [6] - 22:6, 23; 25:9; 26:23; 27:21; 36:18

**see** [7] - 7:7; 18:16, 18, 25; 24:19; 26:16; 33:3

**seek** [1] - 12:20

**seized** [1] - 36:7

**self** [1] - 28:15

**self-surrender** [1] - 28:15

**send** [1] - 14:13

**sensitive** [1] - 15:20

**sentence** [24] - 5:20; 9:8, 10-11, 15; 14:12, 17, 19-20; 15:9, 11, 13; 18:5; 20:8, 18; 21:10, 18; 22:1; 23:3; 24:16; 30:5, 16; 32:3; 37:3

**sentenced** [1] - 33:10

**sentences** [1] - 22:8

**sentencing** [20] - 2:9, 16, 18; 3:8, 15; 4:15; 5:23; 7:15, 18; 8:22, 25; 9:22, 25; 10:2, 5; 11:10; 30:13; 32:13; 36:23

**SENTENCING** [1] - 1:8

**serial** [2] - 36:8, 10

**serious** [3] - 11:16; 12:13; 13:12

**seriousness** [5] - 9:16; 11:15; 12:6; 14:21; 15:16

**serve** [3] - 21:6, 9, 25

**served** [3] - 10:11; 11:9; 21:5

**service** [1] - 28:12

**services** [4] - 20:1; 26:7; 29:21; 33:21

**serving** [3] - 21:18; 22:8; 24:18

**set** [7] - 9:12; 24:5; 25:17; 27:5, 8; 28:5, 16

**setting** [4] - 8:2; 13:25; 19:2; 23:10

**severe** [1] - 18:14

**severely** [1] - 21:21

**sex** [1] - 35:12

**sexual** [6] - 8:12; 12:3; 13:1; 33:19; 34:3, 14

**sexually** [1] - 11:23

**shall** [16] - 33:17, 20, 23, 25; 34:3, 10, 12, 15, 22; 35:2, 6, 9, 11, 15, 22, 25

**shown** [3] - 6:22; 13:14; 27:6

**sick** [2] - 10:23; 24:10

**sides** [2] - 2:10; 4:19

**significant** [4] - 13:16; 16:12; 35:10, 13

**signing** [1] - 29:8

**similar** [5] - 6:12; 34:7, 18, 23; 35:4

**similarly** [1] - 10:3

**similarly-situated** [1] - 10:3

**sites** [2] - 34:9

**situated** [1] - 10:3

**situation** [7] - 6:9; 17:10; 18:15, 21; 23:11; 26:7; 27:1

**situations** [2] - 8:13; 25:21

**Six** [2] - 28:10; 35:25

**six** [6] - 11:22; 18:23; 28:9, 24; 32:9

**six-week** [1] - 32:10

**society** [2] - 8:4; 16:5

**software/hardware** [1] - 34:20

**solicit** [1] - 12:11

**solve** [1] - 31:13

**someone** [2] - 18:25; 19:12

**somewhat** [4] - 6:19; 18:10; 31:4

**son** [2] - 10:19

**sort** [2] - 22:14

**sought** [1] - 12:23

**speaks** [1] - 17:16

**special** [5] - 16:8, 17; 25:13; 33:15; 36:4

**specific** [1] - 14:4

**specifically** [2] - 23:12; 30:12

**spent** [2] - 10:6; 32:18

**St** [4] - 6:10, 17; 7:21; 8:19

**standard** [3] - 16:7; 32:25; 33:15

**start** [1] - 21:18

**started** [2] - 18:12; 19:10

**state** [1] - 2:2

**statements** [1] - 9:25

**STATES** [4] - 1:1, 3, 9, 12

**States** [3] - 1:5; 4:14; 27:9

**status** [1] - 22:16

**statute** [1] - 22:11

**stay** [4] - 3:24; 26:10, 12; 27:14

**stenography** [1] - 1:24

**still** [3] - 20:3; 26:6

**stored** [1] - 34:11

**stories** [1] - 10:12

**stress** [1] - 21:15

**subject** [4] - 17:16; 22:9; 34:24; 35:23

**submission** [2] - 2:19, 25

**submissions** [3] - 3:15; 5:19; 6:2

8

9

submit [2] - 35:15, 21
submitted [4] - 2:15;
3:11; 10:7
substance [1] - 10:15
substantial [1] - 12:5
substitute [1] - 32:14
subtract [1] - 20:15
successful [3] - 6:20,
23; 19:1
sufficient [6] - 4:3;
15:8; 21:13; 28:7, 25;
29:1
suggest [1] - 19:11
suggestion [1] - 19:7
suicidal [1] - 30:4
Suite [1] - 1:20
sum [1] - 15:13
summary [1] - 11:19
supervised [7] - 16:7,
24; 17:10, 22; 25:14,
18; 33:14
support [2] - 3:5; 11:3
surgeries [1] - 21:23
surprise [1] - 31:4
surrender [8] - 25:25;
26:2, 4, 25; 28:15;
36:21, 24
surrendering [1] -
18:19
surrenders [1] - 32:9
surrounding [1] - 7:4
systems [1] - 34:18

                T

T2824 [1] - 36:8
T3882 [1] - 36:10
teenage [1] - 12:3
ten [1] - 37:7
tendencies [1] - 30:4
term [4] - 21:1; 33:12
terms [4] - 4:23;
19:20; 20:19; 24:7
terribly [1] - 22:7
test [1] - 13:24
Testa [2] - 17:6; 21:20
thanking [1] - 7:20
THE [57] - 1:9; 2:1, 8,
13; 3:12, 18, 23; 4:2,
5-6, 9, 12, 23; 7:13,
19; 8:20; 9:4, 7; 17:2,
11, 23; 18:3, 7; 19:4;
20:4, 22, 25; 22:12,
19; 23:17; 24:1, 7, 23;
25:4, 7, 19; 26:9, 18,

21; 28:10, 16, 24;
29:4; 30:1, 11, 15, 19,
25; 31:17; 32:2, 6, 11;
33:2, 7; 37:12, 14
themes [1] - 7:24
therapeutic [3] - 7:4;
8:9; 24:22
therapist [1] - 6:10
therapists [1] - 7:2
therapy [7] - 6:23;
7:3, 21; 8:18; 19:3
Therefore [1] - 13:8
third [2] - 28:13;
33:23
third-party [1] -
33:23
Thomas [1] - 2:1
THOMAS [1] - 1:6
three [5] - 5:7, 11;
16:6; 24:18; 33:13
Three [1] - 35:6
three-level [2] - 5:7,
11
three-year [1] - 33:13
today [8] - 7:25; 15:3;
19:15; 25:24; 27:23;
28:13; 32:8; 37:10
took [1] - 12:4
total [2] - 5:13; 11:17
track [1] - 23:25
tragic [1] - 11:7
TRANSCRIPT [1] - 1:8
Transcript [1] - 1:25
transplant [1] - 10:19
transportation [4] -
31:10, 12, 16, 18
transporting [1] -
29:19
travel [1] - 24:11
treatment [25] - 2:20;
13:22; 14:3; 16:9;
19:17; 20:19, 23, 25;
21:3, 11; 23:4, 14, 23;
25:4, 14, 22; 26:10,
23; 29:9; 30:3; 33:18;
34:2, 5; 36:16
triggered [1] - 19:8
true [1] - 13:24
trust [1] - 11:8
trying [1] - 19:18
turn [1] - 19:12
Two [1] - 34:6
two [9] - 5:2, 4; 7:23;
23:23; 24:18, 24;

25:13; 36:16
two-level [2] - 5:2, 4
type [8] - 6:14; 14:8,
14; 20:7, 10; 22:5;
23:6; 31:20
types [1] - 13:4

                U

ultimately [1] - 31:16
unable [1] - 37:3
undated [1] - 2:17
under [23] - 5:1, 4-5,
7, 12, 18; 6:1, 9;
12:15; 15:1; 27:1, 7,
12, 17; 29:9, 11;
32:17, 22-23; 35:5, 16
undergoing [1] - 30:3
undertake [1] - 31:9
undertaken [1] - 29:18
Unfortunately [1] -
6:11
unit [2] - 36:8
UNITED [4] - 1:1, 3, 9,
12
United [3] - 1:5; 4:14;
27:9
unless [3] - 17:20, 25;
35:7
unsupervised [4] -
16:25; 17:5, 24; 35:6
unusual [2] - 18:10
unwarranted [1] - 10:2
up [3] - 9:1; 19:1;
31:22
update [1] - 3:2
US [2] - 18:13, 19
USA [1] - 2:1

                V

various [1] - 15:14
vehicle [1] - 35:16
verbal [1] - 8:13
via [1] - 34:13
victimization [1] -
13:10
victims [3] - 11:20, 25
view [1] - 34:11
violation [1] - 35:19
violence [2] - 12:19;
20:11
violent [1] - 14:15
virtue [1] - 37:1
visit [1] - 24:9

visitation [3] - 22:2;
24:7, 21
vitiated [1] - 7:6
voluntarily [1] -
36:21
voluntary [5] - 23:2;
25:25; 26:1, 25; 31:20

                W

waived [1] - 37:1
walked [1] - 10:22
warrant [1] - 15:8
warranted [3] - 5:2,
5; 32:23
ways [1] - 10:14
wearing [1] - 20:2
Web [2] - 34:9
week [1] - 32:10
weekend [1] - 29:22
weeks [4] - 28:9, 24;
32:9
weigh [1] - 32:21
weighed [1] - 11:11
wish [1] - 8:21
withdrawn [1] - 7:4
withstand [21] - 21:15
word [1] - 17:24
words [2] - 14:7
works [3] - 11:11, 13;
15:5
worry [1] - 24:20
worth [1] - 19:2
written [1] - 5:19

                Y

yardage [1] - 20:1
year [13] - 6:8; 7:3,
6, 22; 18:23; 19:2;
20:20; 21:3, 6-7, 14;
27:25; 33:13
years [8] - 6:11; 8:11;
10:24; 11:6, 12; 12:5;
16:6; 24:18
YORK [1] - 1:1
York [4] - 1:5, 14, 21;
24:13